UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB )<br>)<br>                Plaintiff, )<br>)<br>  vs. )<br>)<br>UNITED STATES DEPARTMENT OF )<br>AGRICULTURE, RURAL UTILITIES SERVICE; )<br>EDWARD T. SCHAFER, in his official capacity as )<br>Secretary of Agriculture; JAMES M. ANDREW, in )<br>his official capacity as Administrator, Rural Utilities )<br>Service, United States Department of Agriculture )<br>)<br>              Defendants, and )<br>)<br>SUNFLOWER ELECTRIC POWER<br>CORPORATION<br><br>              Proposed Intervenor-<br>              Defendant. | Case No. 07-cv-1860-EGS |

**SUNFLOWER ELECTRIC POWER CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

Sunflower Electric Power Corporation ("Sunflower") seeks to intervene as a matter of right under Fed. R. Civ. P. 24(a), or permissively under Fed. R. Civ. P. 24(b), to protect the interests described in its initial memorandum. Plaintiff's opposition to the motion is ill-founded because, as discussed below, "prudential standing" has been applied to ensure that a plaintiff, not a defendant, is within the "zone of interest" protected or regulated by the statutory scheme allegedly violated by the defendant. Moreover, even assuming the doctrine were applicable to intervenor-defendants, Sunflower's interest meets the test. Plaintiff does not dispute that Sunflower has met the requirements under Fed. R. Civ. P. 24(a) for intervention as a matter of

right and does not dispute that Sunflower has demonstrated its Article III constitutional standing to intervene. The result of Plaintiffs' novel prudential standing requirement would be that a party whose project, or in this case, federal approval, is at risk of being rescinded, halted, modified, or invalidated by a plaintiff's NEPA claim does not have a right to intervene as a defendant in support of the challenged federal action. In other words, Plaintiff would deny intervention by right to a party with an actual interest in the federal action that the Plaintiff is challenging and seeks to rescind. Such a result is at odds with D.C. Circuit precedent and should not be sanctioned by this Court.

I. **SUNFLOWER HAS MET THE REQUIREMENTS OF FED. R. CIV. P. 24(A) AND ARTICLE III CONSTITUTIONAL STANDING, AND THUS IS ENTITLED TO INTERVENE AS A DEFENDANT IN THIS CASE.**

Plaintiff does not dispute that Sunflower has met the requirements for intervention as a matter of right under Fed. R. Civ. P. 24(a). Specifically, Plaintiff does not seriously dispute that Sunflower's motion to intervene is timely,[1] that Sunflower has an interest in the transactions at issue, that Sunflower's interest may be impaired if Sunflower does not intervene, and that Sunflower's interest may not be adequately represented by the existing parties in this case. Pl.'s Mem. in Opp. to Sunfl.'s Mot. to Interv. ("Pl.'s Mem. in Opp. Interv."), at 2 [Dkt. #18]. Neither does Plaintiff dispute that Sunflower has demonstrated Article III constitutional standing to intervene. *Id.* In this circuit, as in others, "any person who satisfies Rule 24(a) will also meet Article III's standing requirement," including standing as an intervenor-defendant. *See Roeder v.*

---

[1] While Plaintiff does not seriously dispute that Sunflower's motion is timely, Plaintiff notes that Sunflower filed its Motion to Intervene "more than five and one-half months later" than the Plaintiff's filed Complaint. Pl.'s Mem. in Opp. Interv., at 1, 5. Plaintiff fails to note, however, that Sunflower's motion was filed before any Answer was filed, and before the Court has ruled on any dispositive motions. Under these circumstances, Sunflower's Motion to Intervene is clearly timely. *See, e.g., Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (determining that the party's Motion to intervene was timely when it was filed before the district court ruled on the preliminary injunction); *Admiral Ins. Co. v. Nat'l Casualty Co.*, 137 F.R.D. 176, 177 (D.D.C. 1991) (determining that the party's intervention was timely when the major substantive issues in the case had not yet been resolved).

*Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003). Thus, Sunflower satisfies all applicable tests to intervene as a matter of right.

II. **THE DOCTRINE OF "PRUDENTIAL STANDING" DOES NOT RESTRICT SUNFLOWER'S ABILITY TO INTERVENE AS A MATTER OF RIGHT.**

Plaintiff misapprehends D.C. Circuit law regarding the application of prudential standing to intervenor-defendants.

A. **The Doctrine of "Prudential Standing" is Inapplicable to Intervenor-Defendants.**

There is no line of precedent in the D.C. Circuit setting forth the requirement that a prospective intervening defendant must establish prudential standing. The cases cited by the Plaintiff requiring prudential standing relate to parties invoking a federal court's jurisdiction through the filing of a motion to intervene as a plaintiff. *See In re Vitamins Antitrust Class Actions*, 215 F.3d 26 (D.C. Cir. 2000); *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998).[2] When courts determine whether intervention as a matter of right for a defendant is proper in the D.C. Circuit, courts limit their considerations to requirements under Fed. R. Civ. P. 24(a) and to Article III constitutional standing. *See, e.g., Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233-34 (D.C. Cir. 2003); *Williams & Humbert Ltd. v. W & H Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988); *Friends of Animals v. Kempthorne*, 452 F. Supp.2d 64, 67-68 (D.D.C. 2006); *American Horse Protection Association, Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001). Sunflower has already met these requirements.

The prudential standing doctrine applies to a plaintiff that seeks to bring a complaint in a federal court and to establish the court's jurisdiction to hear its claim. The doctrine emerged

---

[2] In *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 734 n.6 (D.C. Cir. 2003), the court noted in *obiter dicta* in a footnote that the plaintiffs "rightly" did not question the prospective intervening defendants ability to demonstrate any prudential standing requirements that could exist. The *Fund for Animals* court relied on cases discussing the prudential standing for plaintiffs, and did not hold that prudential standing was required as a matter of law for intervenor-defendants.

from *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970), which stated that "[t]he question of standing" included "the question whether the interest sought to be protected by the *complainant* is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (emphasis added). The Supreme Court itself has admitted that the "zone of interest" formula "has not proved self-explanatory." *Clarke v. Securities Indus. Assoc.*, 479 U.S. 388, 396 (1987). The *Clarke* court explained that the "zone of interest" test, designed for plaintiffs, is merely the following:

> a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular *plaintiff* should be heard to complain of a particular agency decision. In cases where the *plaintiff* is not itself the subject of the contested regulatory action, the test denies a right of review if the *plaintiff's* interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. This test is not meant to be especially demanding.

*Id*. at 399 (emphasis added). The Supreme Court has not addressed how the prudential standing doctrine would operate for defendants. *C.f. Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004); *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998) (addressing the application of prudential standing doctrine to plaintiffs).

Even though the D.C. Circuit has adopted an Article III standing requirement for prospective intervenors,[3] and courts have formulated various interpretations for the application of the Article III standing requirement for defendants, the D.C. Circuit has not extended the requirement to include "prudential standing" for prospective intervenor-defendants. The D.C. Circuit recognizes that a strict application of standing principles to a defendant's ability to participate is incongruous with established jurisprudential principles that standing is primarily an inquiry that relates to a plaintiff's ability to initiate a lawsuit. The D.C. Circuit has stated,

---

[3] Not all circuits require intervenors to establish standing. In *Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533, 537-8 (D.C. Cir. 1999), the D.C. Circuit discussed a split in the circuits on whether prospective intervenors must establish standing.

> As to intervention in the district court, requiring standing for an applicant wishing to come in on the side of a plaintiff who has standing runs into the doctrine that Article III is satisfied so long as one party has standing. *Requiring standing of someone who seeks to intervene as a defendant runs into the doctrine that the standing inquiry is directed at those who invoke the court's jurisdiction.*

*Roeder*, 333 F.3d at 233 (internal citations omitted) (emphasis added).  One district court has further described standing as it applies to defendants in this way:  "It would follow that, when a party seeks to intervene as a defendant to uphold what the government has done, it would have to establish that it will be injured in fact by the setting aside of the government's action it seeks to defend, that this injury will have been caused by that invalidation, and the injury would be prevented if the government action is upheld."  *Am. Horse Prot. Ass'n*, 200 F.R.D. at 156.  Sunflower has satisfied this test.  *See* Sunfl.'s Mem. in Supp. of Mot. to Interv. ("Sunfl. Mem.") [Dkt. #17].

> **B.     Were Sunflower Required to Demonstrate "Prudential Standing," Sunflower's Interest in this Case Would Fall Within the Requisite Zone of Interest.**

Although inapplicable, were the Court to extend the application of prudential standing to an intervenor-defendant, Sunflower would meet the test.  The D.C. Circuit explained the prudential standing doctrine in *National Petrochemical & Refiners Association v. E.P.A*:

> To demonstrate prudential standing, [the petitioner] must show that the interest it seeks to protect is arguably within the zone of interests to be protected or regulated by the statute in question. This test is not meant to be especially demanding.  Indeed, a petitioner is outside the statute's zone of interests only if [petitioner's] interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.  In determining whether a petitioner falls within the zone of interests to be protected by a statute, we do not look at the specific provision said to have been violated in complete isolation, but rather in combination with other provisions to which it bears an integral relationship.

287 F.3d 1130, 1147 (D.C. Cir. 2002) (internal quotations and citations omitted).  Sunflower's interest would satisfy this inquiry.

Because NEPA creates no private right of action, challenges to agency NEPA compliance must be brought pursuant to the APA. *See Karst v. E.P.A.*, 475 F.3d. 1291, 1295 (D.C. Cir. 2007). As explained in *Ass'n of Data Processing Serv. Org.*, the APA grants standing to a person "aggrieved by agency action within the meaning of a relevant statute." *See* 397 U.S. at 153. "That interest, at times, may reflect 'aesthetic, conservational, and recreational' as well as economic values." *Id.* at 154. The mandate of NEPA, in turn, "is essentially procedural." *City of Alexandria v. Slater*, 198 F.3d 862, 866 (D.C. Cir. 1999) (citing *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 558 (1978)). The statute "requires that agencies assess the environmental consequences of federal projects by following certain procedures during the decision-making process." *Id.* Because of this, injuries alleged to have occurred as a result of violating the "procedural right" of NEPA, including injuries related to a failure to follow NEPA procedures, have been held by courts as sufficient to confer standing. *See City of Dania Beach, Fla. v. Fed. Aviation Admin.*, 485 F.3d 1181, 1185-7 (D.C. Cir. 2007) (acknowledging that plaintiff's "procedural injury" under NEPA was sufficient to create standing).

Here, Plaintiff has claimed standing to bring a suit under the APA and NEPA alleging that the 2002 and 2007 approvals by the Rural Utilities Service ("RUS") of Sunflower business transactions constitute "major Federal actions significantly affecting the quality of the human environment," and that RUS violated the procedures of NEPA by issuing these approvals without further environmental analysis. Complaint ¶ 100. Plaintiff is asserting a procedural injury, seeking a rescission of the approvals on these grounds. Complaint at 21 ¶ 2. Defendant RUS counters that its approvals are not "major Federal actions" under either NEPA or RUS' NEPA regulations, and that no NEPA violation has occurred. See Def.'s Mem. in Supp. of Mot. to

Dismiss, at 21-37 [Dkt. #12]. Sunflower seeks to intervene as a defendant, in order to protect its interest in receiving and relying upon past, present, and future approvals by RUS of Sunflower business transactions that have and will be rendered in full compliance with all NEPA procedures, including RUS' existing NEPA regulations. Sunfl. Mem., at 6-16.

Sunflower has received and relied upon the approvals challenged by the Plaintiff, and possesses a direct interest in the validity of the RUS NEPA procedures that support these challenged actions. Indeed, the withholding of RUS approval of the business transactions at issue, based on a need for NEPA review, would be an arbitrary and capricious action taken in direct violation of 7 C.F.R. § 1794.3 of RUS' own NEPA regulation, which provides that "[a]pprovals provided by RUS pursuant to loan contracts and security agreements" are not agency actions subject to NEPA environmental review. Careful adherence to "certain procedures during the decision-making process" is the regulatory core of NEPA. *See City of Alexandria*, 198 F.3d. at 866. Because of its real interest in the validity of approvals issued under RUS' NEPA procedures, it would be impossible to conclude that Sunflower's "interests are so marginally related to or inconsistent with" the procedural mandate of NEPA such that Sunflower does not fall within the statute's zone of interests. *See Nat'l Petrochemical & Refiners Ass'n*, 287 F.3d at 1147 (using "marginally related to or inconsistent with" test). Thus, Sunflower would demonstrate adequate prudential standing if this requirement were applicable to intervenor-defendants.

Plaintiff maintains that the financial loss that Sunflower may suffer should the 2002 and 2007 approvals be rescinded "is not within the zone of interest protected by NEPA." Pl.'s Mem. in Opp. Interv., at 1, 3. Of course, the relief requested by Plaintiff under the APA is equitable in nature and the court is entitled to consider economic interests in a decision whether, and what,

relief is appropriate. Indeed, as mandated by Congress, NEPA itself reflects a federal policy that accommodates economic considerations, "to create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, *economic*, and other requirements of present and future generations of Americans" by requiring agencies to follow specified environmental review procedures. *See* 42 U.S.C. § 4331(a) (emphasis added).

Moreover, as stated by one court, "[e]ven if a particular litigant is outside the class for whose benefit the statute was enacted, that litigant retains prudential standing so long as its interests are sufficiently congruent with those of the intended beneficiaries that the litigants are not more likely to frustrate than to further . . . statutory objectives." *See In re Vitamins Class Actions,* 215 F. 3d at 29. In *National Association of Home Builders v. U.S. Army Corps of Engineers*, the D.C. Circuit explained that "commercial entities are not *per se* excluded from NEPA's zone of interest." 417 F.3d 1272, 1287 (D.C. Cir. 2005). The D.C. Circuit clarified, "[p]arties motivated by purely commercial interests routinely satisfy the zone of interests test, we have said, as congruence of interests, rather than identity of interests, is the benchmark." *Id*. (internal quotations omitted). Here, Sunflower's interests, like those of Plaintiff and RUS, are related to RUS' compliance with NEPA procedures. Sunflower's interests, although those of a consumer-owned business cooperative, are thus sufficiently congruent to NEPA's zone of interest in order to confer standing.

### III.  CONCLUSION

Sunflower does not seek to alter the scope of the case, or to extend the court's subject matter jurisdiction beyond what the Plaintiff has already set forth. Sunflower has expressed its belief that the briefing on Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) was adequate. Sunfl. Mem., at 1. Sunflower does not intend to file a separate memorandum in

support of that Motion to Dismiss. Moreover, Sunflower will certainly follow all scheduling orders issued by the Court. However, Sunflower believes that the Plaintiff's proposed conditions on Sunflower's intervention are arbitrary and contrary to the purpose of Fed. R. Civ. P. 24, which affords "all parties with a real stake in the controversy" an equal opportunity to be heard, despite their varied interests. *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972).

Because Sunflower has met all requirements for intervention, Sunflower respectfully requests this Court to grant Sunflower's Motion to Intervene under Fed. R. Civ. P. 24, so that Sunflower may participate in the case on full and equal footing with all parties without the restrictions urged by the Plaintiff.

Date:  April 25, 2008

                                    Respectfully submitted,

                                    /s/   Matthew A. Axtell
                                  MATTHEW A. AXTELL (D.C. Bar # 482349)
                                  Vinson & Elkins LLP
                                  1455 Pennsylvania Avenue NW, Suite 600
                                  Washington, DC 20004
                                  202-639-6588 (telephone)
                                  202-639-6604 (facsimile)
                                  maxtell@velaw.com

Of counsel:

CAROL  E. DINKINS
SHARON M. MATTOX
Counsel for Sunflower Electric Power Corporation
Vinson & Elkins LLP
1001 Fannin Street, Suite 2500
Houston, Texas 77002
713-758-2528 (telephone)
713-758-4598 (telephone)
cdinkins@velaw.com
smattox@velaw.com

MARK CALCARA
General Counsel
Sunflower Electric Power Corporation
P.O. Box 1020
Hays, KS 67601-1020

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2008, I electronically filed the foregoing SUNFLOWER ELECTRIC POWER CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE with the Clerk of the Court though the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Nicholas F. Persampieri
npersampieri@earthjustice.org

David Baron
dbaron@earthjustice.org, fsantana@earthjustice.org, zmaxfield@earthjustice.org

*Counsel for Plaintiff Sierra Club*

Brian C. Toth
brian.toth@usdoj.gov

Julie S. Thrower
julie.thrower@usdoj.gov

*Counsel for Defendants United States Department of Agriculture, Rural Utility Service; Edward T. Schafer; and James M. Andrew*

/s/ Matthew A. Axtell
MATTHEW A. AXTELL (D.C. Bar # 482349)
Vinson & Elkins LLP
1455 Pennsylvania Avenue NW, Suite 600
Washington, DC 20004
202-639-6588 (telephone)
202-639-6604 (facsimile)
maxtell@velaw.com